Miller, J. (concurring in the result in the following memorandum).
I concur in the result reached by my colleagues to affirm the order insofar as appealed from by the plaintiffs and reverse the order insofar as appealed from by the defendant Kim Rosary DeCastro. I write separately to express my views regarding the duty CPLR 3101 (d) (1) (i) imposes on parties to provide pretrial expert disclosure and the extent to which a court has the discretion to fashion penalties for a party’s failure to comply. *49 It is my belief that further analysis of CPLR 3101 (d) (1) (i) and of this Court’s case law will help clarify this area of the law and permit the application of the statute in a manner that is predictable for the bar, workable for the bench, and consistent with the legislature’s purpose in enacting it.
As enacted in 1962, CPLR 3101 provided that evidence pertaining to expert witnesses was generally exempt from pretrial disclosure unless certain exceptions applied which would result in injustice or undue hardship (see CPLR former 3101, as added by L 1962, ch 308; see also Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.52a [2012]; Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 6). An advisory committee’s report shows that the decision to distinguish expert testimony from other forms of evidence was motivated, at least in part, by the desire to shield tactical considerations from adverse parties (1st Preliminary Rep of Advisory Comm on Prac and Pro of Temp Commn on Cts, 1957 NY Legis Doc No. 6 [b], tit 34 at 120).
In 1985, the legislature enacted legislation, known as the Medical Malpractice Reform Act, which was intended to “expedite the resolution of malpractice claims and thereby reduce the cost of malpractice litigation” (Tewari v Tsoutsouras, 75 NY2d 1, 7 [1989]; see L 1985, ch 294, § 1; see also Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 4). As one of the steps intended to expedite litigation and facilitate settlements, section 4 of the legislation “require[d] the disclosure of the qualifications of experts and the substance of their testimony prior to trial in civil actions” (Governor’s Program Bill Mem, Bill Jacket, L 1985, ch 294 at 4; see Tewari v Tsoutsouras, 75 NY2d at 7; see also 1985 Rep of Advisory Comm on Civ Prac at 43, reprinted in 1985 McKinney’s Session Laws of NY at 3378).
The rationale for expanding the scope of discovery to include experts was provided in the Governor’s Program Bill Memorandum:
“Although virtually all other information is now shared by litigants in civil practice, information concerning expert witnesses and their opinions remains shielded from disclosure. Since the testimony of expert witnesses is often the single most important element of proof in malpractice and other personal injury actions, sharing information concerning these opinions encourages prompt settlement by providing both parties an accurate measure *50 of the strength of their adversaries’ case. In addition, both parties will be discouraged from asserting unsupportable claims or defenses, knowing that they will be required to disclose what, if any expert evidence will support their allegations” (Bill Jacket, L 1985, ch 294 at 9-10).
Though the legislature was specifically motivated to reduce the cost of litigating medical malpractice actions when it amended CPLR 3101, its provisions regarding disclosure, as relevant here, do not make reference to specific types of actions and are applicable to all kinds of experts. In its current form, CPLR 3101 provides that, once requested,
“each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion” (CPLR 3101 [d] [1] [i]).
Although the statute mandates that “[u]pon request” a party “shall” identify the experts it “expects to call as an expert witness at trial” (CPLR 3101 [d] [1] [i]), it does not specify a particular date by which a party must retain or disclose its expected trial experts (compare CPLR 3101 [d] [1] [i], with Fed Rules Civ Pro rule 26 [a] [2] [D] [i] [requiring experts to be disclosed “at least 90 days before the date set for trial or for the case to be ready for trial” absent a stipulation or court order]). Although, as it is often stated, CPLR 3101 (d) (1) (i) “does not require a party to retain an expert at any specific time” (Lillis v D’Souza, 174 AD2d 976, 976 [1991] [emphasis added]; see Saldivar v I.J. White Corp., 46 AD3d 660, 661 [2007]), it nevertheless does indicate that noncompliance occurs when a party “retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof’ (CPLR 3101 [d] [1] [i]).
The statute provides little guidance as to how to determine when a failure to disclose is untimely, as it only makes reference to an “appropriate” amount of time (CPLR 3101 [d] [1] [i]). However, the fact that this time limitation has been left vague does not warrant the conclusion that the legislature did not intend for there to be any time limitation. Indeed, such a read *51 ing would be contrary to the purpose of the statute to expand pretrial disclosure so as to encompass the parties’ experts.
It is evident from the plain language of the statute, which contemplates disclosure “before the commencement of trial” (CPLR 3101 [d] [1] [i]), that the disclosure must occur at some point prior to trial (see Vigilant Ins. Co. v Barnes, 199 AD2d 257, 257-258 [1993]; Bauernfeind v Albany Med. Ctr. Hosp., 195 AD2d 819, 819-820 [1993]; see also Mankowski v Two Park Co., 225 AD2d 673, 673-674 [1996]). In determining whether there has been compliance with CPLR 3101 (d) (1) (i), this Court has consistently cited to the filing of a note of issue and certificate of readiness as the procedural event after which disclosure is untimely under the statute (see e.g. Lombardi v Alpine Overhead Doors, Inc., 92 AD3d 921, 921 [2012]; Kopeloff v Arctic Cat, Inc., 84 AD3d 890, 890-891 [2011]; Ehrenberg v Starbucks Coffee Co., 82 AD3d 829, 830-831 [2011]; Pellechia v Partner Aviation Enters., Inc., 80 AD3d 740, 741 [2011]; Gerardi v Verizon N.Y., Inc., 66 AD3d 960, 961 [2009]; Dawson v Cafiero, 292 AD2d 488, 489 [2002]; Blade v Town of N. Hempstead, 277 AD2d 268, 269 [2000]; Ortega v New York City Tr. Auth., 262 AD2d 470, 470 [1999]; Martin v NYRAC, Inc., 258 AD2d 443, 443-444 [1999]). Where a party has failed to provide expert disclosure prior to the filing of the note of issue and certificate of readiness, this Court has upheld penalties imposed for noncompliance with CPLR 3101 (d) (1) (i), even where the penalties ultimately resulted in the dismissal of a party’s case (see e.g. Lombardi v Alpine Overhead Doors, Inc., 92 AD3d at 921).
Indeed, the filing of a note of issue and certificate of readiness for trial requires a party to represent to the court that discovery is complete and that there are no outstanding requests for discovery (see Uniform Rules for Trial Cts [22 NYCRR] § 202.21 [b]). A party that certifies that discovery is complete or that does not move to vacate the note of issue within 20 days (see Uniform Rules for Trial Cts [22 NYCRR] § 202.21 [e]) has effectively represented to the court that the additional disclosure of experts is unnecessary. To require expert disclosure prior to the completion of discovery is consistent with the legislature’s purpose of expanding the scope of discovery.
A court has the discretionary authority to impose a penalty on a party for its failure to comply with discovery deadlines imposed by CPLR 3101 (d) (1) (i) or in a. discovery order issued by the court overseeing discovery (see CPLR 3126, 3406 [b]; see also Uniform Rules for Trial Cts [22 NYCRR] §§ 202.12 [f]; *52 202.56 [b] [2]). These enforcement mechanisms are vital to the integrity of the discovery process and to the court’s responsibility to oversee discovery (cf. Brill v City of New York, 2 NY3d 648 [2004]), and are therefore necessary to effectuate the legislature’s goal, in enacting CPLR 3101 (d) (1) (i), of expanding pretrial discovery to encompass experts.
However, CPLR 3101 (d) (1) (i) contains provisions which, if triggered, serve to limit a court’s discretion to preclude expert evidence which has not been timely disclosed. A plain reading of this portion of the statute indicates that an expert’s testimony shall not be precluded solely for noncompliance where good cause is shown as to why an expert was not retained far enough in advance of trial to give appropriate notice (see CPLR 3101 [d] [1] [i]; Benedict v Seaslle Equities Corp., 190 AD2d 649, 649-650 [1993]; Simpson v Bellew, 161 AD2d 693, 693 [1990]; see also Corning v Carlin, 178 AD2d 576, 576 [1991]). As such, a showing of good cause limits the court’s discretion to sanction a noncomplying party with preclusion. The party seeking to limit the court’s discretion (i.e., the noncomplying party) has the burden of demonstrating good cause so as to invoke the protection of CPLR 3101 (d) (1) (i). If this burden is not met, preclusion as a penalty for noncompliance is an available remedy for the court to consider in the exercise of its discretion and in light of the other circumstances of the case.
However, as it is often stated, “ ‘CPLR 3101 (d) (1) (i) does not . . . “mandate that a party be precluded from proffering expert testimony merely because of noncompliance with the statute” ’ ” (Saldivar v I.J. White Corp., 46 AD3d at 661, quoting Aversa v Taubes, 194 AD2d 580, 582 [1993], quoting Lillis v D’Souza, 174 AD2d at 976). In other words, the statute does not require preclusion for noncompliance, and the decision of whether and to what extent a court should impose the penalty of preclusion, or some lesser penalty for noncompliance, is still left to the providently exercised discretion of the court.
Some commentators may have interpreted this Court’s case law as standing for the proposition that a party’s failure to disclose its experts pursuant to CPLR 3101 (d) (1) (i) prior to the filing of the note of issue and certificate of readiness requires a court to preclude an expert’s affirmation or affidavit submitted in support of a motion for summary judgment (see e.g. Robert Tolchin, Concerns Over Adoption Of ‘Singletree’ on Expert Affidavits, NYLJ, July 26, 2012). However, this Court has never so held, and in cases where this Court has approved of the penalty *53 of preclusion, this Court has consistently done so on the ground that the trial court “did not improvidently exercise its discretion” in imposing such a penalty for noncompliance with the disclosure deadlines imposed under CPLR 3101 (d) (1) (i) (Construction by Singletree, Inc. v Lowe, 55 AD3d 861, 863 [2008]; see e.g. Liang v Yi Jing Tan, 98 AD3d 653 [2012]; Crawford v Village of Millbrook, 94 AD3d 1036, 1037 [2012]; Mohamed v New York City Tr. Auth., 80 AD3d 677, 678-679 [2011]; Parlante v Cavallero, 73 AD3d 1001, 1003 [2010]; Safrin v DST Russian & Turkish Bath, Inc., 16 AD3d 656, 656 [2005]; cf. Bernardis v Town of Islip, 95 AD3d 1050, 1051 [2012]; Hayden v Gordon, 91 AD3d 819, 820 [2012]). Although this Court may have referred to an expert’s affidavit as “not admissible,” it was only rendered inadmissible by a preclusion order, imposed as a penalty for noncompliance by a trial court in the provident exercise of its discretion (Colon v Chelsea Piers Mgt., Inc., 50 AD3d 616, 617 [2008]).
In sum, under this Court’s precedent, the failure of a party to exchange expert information pursuant to CPLR 3101 (d) (1) (i) before the filing of a note of issue and certificate of readiness constitutes noncompliance under the statute. However, such a failure does not divest a trial court of the discretion to consider an affirmation or affidavit submitted by that party’s experts in the context of a motion for summary judgment (accord Bernardis v Town of Islip, 95 AD3d at 1051; Hayden v Gordon, 91 AD3d at 820). Rather, the determination of whether and to what extent a penalty should be imposed upon a party for its failure to comply with CPLR 3101 (d) (1) (i) is left to the providently exercised discretion of the court. In considering whether preclusion is an appropriate penalty for noncompliance, a court should look to whether the party seeking to avoid preclusion has demonstrated good cause for its noncompliance, whether the noncompliance was willful or whether it served to prejudice the other party, and any other circumstances which may bear on the appropriateness of preclusion. These may include, but are not limited to, the length of time that has passed since the commencement of the litigation, the amount of time that has passed since expert disclosure was demanded, and the extent to which the nature of the case or the relevant theories asserted therein rendered it apparent that expert testimony would be necessary to prosecute or defend the matter.
Where, in the provident exercise of its discretion, a court determines that preclusion is an appropriate remedy, such a de *54 termination may impact the disposition of a motion for summary judgment, inasmuch as “a preclusion order may serve as a basis for summary judgment dismissing the complaint” (Anderson v RC Dolner, Inc., 43 AD3d 837, 838 [2007]; see e.g. Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006]; Rahman v MacDonald, 17 AD3d 438, 438-439 [2005]; Contarino v North Shore Univ. Hosp. at Glen Cove, 13 AD3d 571, 572 [2004]). It is appropriate to consider an argument that expert evidence should be precluded in the context of a motion for summary judgment because such a motion is “the procedural equivalent of a trial” (Dykeman v Heht, 52 AD3d 767, 769 [2008]). Where a party is precluded from tendering evidence necessary to establish an essential element of a cause of action, or to raise a triable issue of fact in opposition to a prima facie case, judgment as a matter of law is warranted with respect to that cause of action (see generally Parker v Mobil Oil Corp., 7 NY3d at 448; Rahman v MacDonald, 17 AD3d at 438-439; Contarino v North Shore Univ. Hosp. at Glen Cove, 13 AD3d at 572).
As set forth in the majority opinion, given the circumstances of this case, the Supreme Court providently exercised its discretion when it declined to preclude the experts’ affirmations submitted by Bliss, MacDonald, the Medical Center, and DeCastro in support of their respective motions for summary judgment. Accordingly, I concur in the result reached by my colleagues to affirm the order insofar as appealed from by the plaintiffs and reverse the order insofar as appealed from by DeCastro.
Balkin, J.P., and Hall, J., concur with Belen, J.; Miller, J., concurs in a separate opinion.
Ordered that the order is affirmed insofar as appealed from by the plaintiffs; and it is further,
Ordered that the order is reversed insofar as appealed from by the defendant Kim Rosary DeCastro, on the law, and that branch of the motion of the defendant Kim Rosary DeCastro which was for summary judgment dismissing the complaint insofar as asserted against her is granted; and it is further,
Ordered that one bill of costs is awarded to the defendants appearing separately and filing separate briefs, payable by the plaintiffs.